UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANGHAI WESTON TRADING
CO., LTD.,

    Plaintiff,      Case No. 1:23-cv-117

  v.          JUDGE DOUGLAS R. COLE

TEDIA COMPANY, LLC,

    Defendant.

## OPINION AND ORDER

  Plaintiffs usually receive wide berth when requesting leave to amend their pleadings. But that liberality has bounds—for example, a requested amendment's futility provides grounds for denial. Here, Defendant Tedia Company, LLC argues that this limitation precludes many of Plaintiff Shanghai Weston Trading Co., Ltd.'s proposed changes to its Complaint. Specifically, in its motion to amend, Shanghai Weston seeks to add a new claim for civil conspiracy, remove a fraud claim that the Court previously dismissed, (s*ee* Op. & Order, Doc. 26), and remove previously asserted permanent injunction and declaratory judgment claims. (Doc. 39). Not surprisingly, Defendant Tedia Company, LLC, is fine with the proposed subtractions. But it opposes Shanghai Weston's attempt to add the civil conspiracy claim. (Doc. 42, #613–14, 616 n.2). Tedia says that the civil conspiracy claim is futile and "a transparent attempt to hold Tedia [] liable for the alleged conduct of non-parties." (*Id.* at #613). For the reasons discussed below, the Court disagrees that the proposed

civil conspiracy amendment is futile. It therefore **GRANTS** Plaintiff's Motion for Leave to File Amended Complaint *Instanter* (Doc. 39).

## BACKGROUND

The Court detailed the background of this controversy at length in its December 19, 2023, Opinion and Order. (Doc. 26). For present purposes, a brief retelling of the alleged facts, supplemented with some intervening events, suffices.[1] Beginning in November 1998, Shanghai Weston served as Tedia's distributor in China for the chemical solvents Tedia produces. (*Id.* at #431). Shanghai Weston says this arrangement was an exclusive one. (*Id.* at #432). The relationship started to collapse after Tedia sold its ownership interest in Anhui Tedia High Purity Solvents Co., Ltd. (Anhui)—a company Tedia used to produce chemical solvents in China—to Shanghai Titan Technology Company (Titan) in late 2021. (*Id.* at #431–33). Before that, Titan had been one of Shanghai Weston's customers for Tedia solvents. (*Id.* at #433–34). The sale of Anhui to Titan not only cost Shanghai Weston its customer relationship with Titan, it also made Titan a competitor. According to Shanghai Weston, Tedia began marketing and selling Tedia products through Titan in violation of the exclusive distributorship arrangement between Tedia and Shanghai Weston. (*Id.*). Additionally, Shanghai Weston alleges that several purchase orders it submitted in late 2021, which Tedia accepted, were never fulfilled. (*Id.* at #434).

---

[1] In recounting the background here, based on the allegations in the Complaint (and proposed Amended Complaint), the Court reminds the reader that they are just that—allegations.

2

Based on these allegations, Shanghai Weston's original Complaint raised eleven claims. (*See* Doc. 1, #14–25). Tedia moved to dismiss only three of these claims—breach of contract, tortious interference with a business contract, and fraud. (Doc. 21). The Court denied Tedia's motion as to the breach of contract and tortious interference claims, but dismissed the fraud claim without prejudice. (Doc. 26, #450).

Shortly after the Court's earlier Opinion and Order, Tedia answered. (Doc. 29). There, it included counterclaims for declaratory judgment and breach of contract. (*Id.* at #472–74). Shanghai Weston answered Defendant's Counterclaim on February 6, 2024. (Doc. 31). The parties submitted their Rule 26(f) Report on February 22, 2024, and the Court held a preliminary pretrial conference a week later. (Doc. 32; 2/29/24 Min. Entry). That same day, the Court issued a Calendar Order. (Doc. 33). Relevant to the disposition of the present motion, the Calendar Order set a May 29, 2024, deadline for moving to amend the pleadings. (*Id.*).

On that date, Shanghai Weston timely filed its Motion for Leave to File Amended Complaint *Instanter*, attaching the proposed Amended Complaint. (Docs. 39, 39-1). The Motion expressly identifies two changes. First, Shanghai Weston seeks to add a new civil conspiracy claim. Second, it seeks to remove several previous claims—for fraud (which the Court dismissed without prejudice), preliminary and permanent injunction, and declaratory judgment. (Doc. 39, #526; *see* Doc. 39-1, #548–554). But the proposed Amended Complaint reflects a few other changes, as well. Specifically, it adds, alters, or splits apart several factual allegations. (*E.g., compare*

3

Doc. 1 ¶ 2, #2 *with* Doc. 39-1 ¶¶ 2–3, #535).[2] This includes adding several new purchase order allegations. (*See* Doc. 39-1 ¶¶ 48–52, 61–68, #541–43).

In sum, the proposed Amended Complaint raises nine claims[3]: (1) breach of the exclusivity agreement (Count I); (2) breach of the purchase orders (Count II); (3) promissory estoppel arising out of the exclusivity agreement (Count III); (4) promissory estoppel arising out of the purchase orders (Count IV); (5) unjust enrichment (Count V); (6) Tedia's tortious interference with the exclusivity agreement as it pertained to Anhui (Count VI); (7) Tedia's tortious interference with Shanghai Weston's business relationship with Anhui (Count VII); (8) conversion (Count VIII); and (9) civil conspiracy (Count IX). (Doc. 39-1, #548–54)

The only new claim—the civil conspiracy claim—alleges that "Tedia, Anhui [], and Titan came together to and conspired to injure [Shanghai] Weston by intentionally interfering with [Shanghai] Weston's business contracts and relationships and to convert Tedia Products to which [Shanghai] Weston had ownership interest."[4] (Doc. 39-1 ¶ 151, #553). It further alleges that:

> Tedia, Anhui [], and Titan conspired to take actions that would result in: (1) Titan being appointed as a distributor of Tedia Products in China; (2) Titan being able to distribute Tedia Products in China prior to January 1, 2024; (3) Tedia Products ordered by [Shanghai] Weston being

---

[2] As for semantic changes, Shanghai Weston appears to use more precise language in its proposed Amended Complaint. For example, "contrary to prior business practices between the companies" becomes "acting in a manner inconsistent with the parties' course of dealing." (*Compare* Doc. 1 ¶ 3, #2 *with* Doc. 39-1 ¶ 4, #535).

[3] Eight of these claims were included in the original Complaint. (*See* Doc. 1, #14–27).

[4] Shanghai Weston frames this slightly differently in the beginning of its proposed Amended Complaint, describing the allegedly converted products as those "that should have been delivered directly to Weston" instead of as those to which it "had ownership interest." (Doc. 39-1 ¶ 7, #536).

4

shipped to Anhui [] with [Shanghai] Weston being required to issue separate purchase orders to Anhui under new terms and conditions; (4) intentional delay of shipments of Tedia Products ordered by [Shanghai] Weston under Purchase Contracts (defined hereunder); and (5) Anhui [], under Titan's control, displacing [Shanghai] Weston as the exclusive distributor of Tedia products in China.

(*Id.* ¶ 152, #553–54).

Tedia responded on June 20, 2024. (Doc. 42). It opposes Shanghai Weston's addition of the civil conspiracy claim for two reasons: (1) "Shanghai Weston has not (and cannot) plausibly allege the operative facts necessary to show any *agreement* among Tedia [], Anhui [], and Titan to injure Shanghai Weston by engaging in tortious conduct," and (2) "Shanghai Weston lacks any viable underlying tort claim upon which to base a derivative claim for civil conspiracy." (*Id* at. #613–14 (emphasis in original)). Shanghai Weston replied on July 12, 2024. (Doc. 46). Things then took a bit of a pause as the parties engaged in prolonged settlement discussions after submitting these briefs, but those efforts are currently at an impasse. (9/5/24 Min. Entry; 10/30/24 Min. Entry). The matter is thus ripe for review.

## LEGAL STANDARD

When a party seeks leave to amend, as Shanghai Weston does here, a district court is afforded broad discretion in resolving the motion. *Cheryl & Co. v. Krueger*, No. 2:18-cv-1485, 2019 WL 7821056, at *1, (S.D. Ohio Dec. 12, 2019) (citing *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)). That said, Federal Rule of Civil Procedure 15(a)(2) applies, and it puts something of a thumb on the scale, instructing courts to "freely give[] leave when justice so requires." *Gen. Elec. Co.*, 916 F.2d at 1130. Thus, a district court's "outright refusal to grant the leave without any

5

justifying reason … is not an exercise of discretion," but instead an abuse of it that is "inconsistent with the spirit of the Federal Rules." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). And consistent with that, absent "any apparent or declared reason [for denying leave]— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies[,] … undue prejudice to the opposing party[,] … futility of [the] amendment, etc.," leave should be granted. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (quoting *Foman*, 371 U.S. at 182).[5]

Nonetheless, one reason a court may deny a request for leave is futility. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quotation omitted); *see also Parchman*, 896 F.3d at 737–38. And to survive a motion to dismiss, a party "must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construes the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l*

---

[5] While the entry of a calendar order can change a court's analysis of whether to grant leave to amend, Shanghai Weston timely filed its motion on the Calendar Order's deadline to amend the pleadings on May 29, 2024. (Doc. 33). So Rule 15 still applies (rather than Rule 16, which entails a higher threshold for modifying scheduling orders). *See Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008).

6

*Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But that grace only extends so far. The Court cannot accept "naked assertions," legal conclusions, or "formulaic recitation[s] of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). And while well-pleaded allegations are accepted as true, they are just that—allegations.

So Shanghai Weston must "state[] a claim for relief that is plausible, when measured against the elements" of the relevant claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). Here the proposed additional claim is civil conspiracy, which Ohio law defines as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (citation omitted).[6] A party must show four elements "to establish a claim of civil conspiracy[:] … '(1) malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Jordan v. Murphy*, 145 F. App'x 513, 520 (6th Cir. 2005) (quoting *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir.2000)). Regarding that first element—malicious combination—an express agreement is not required. Rather, "only a common understanding or design, even if tacit" is required, and this

---

[6] As the Court noted in its preliminary choice-of-law analysis from its December 19, 2023, Opinion and Order, the Court applies Ohio law because the parties appear to agree that it applies, and the record is sufficient at this time to establish that "no injustice [would be] wrought by applying [Ohio] law to these acquiescent litigants." (Doc. 26, #437–38 n.5 (quoting *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998)). The Court reiterates, however, that this is subject to reconsideration and revision should facts be adduced during discovery that alter the analysis.

is often proven through circumstantial evidence. *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007). "[A]mong the factors a fact finder may consider in inferring a conspiracy [per a tacit agreement] are the relationship of the parties, proximity in time and place of the acts, and the duration of the actors' joint activity." *In re Nat'l Century Fin. Enters., Inc.*, 846 F. Supp. 2d 828, 896 (S.D. Ohio 2012).

## LAW AND ANALYSIS[7]

Shanghai Weston argues that the Court should grant leave for it to file its Amended Complaint—focusing on the addition of the civil conspiracy claim—for several reasons. First, it says the civil conspiracy claim "arises from facts associated with [Shanghai] Weston's claims for Interference with Business Contract (Count VI), Interference with Business Relationship (Count VII), and Conversion (Count VIII)." (Doc. 39, #531). Next, Shanghai Weston states the request "is not being made in bad [faith], for the purpose of delay, with dilatory motive, or to cure deficiencies" (as it has not previously amended its Complaint). (*Id.*). Finally, it says that the civil conspiracy amendment will not prejudice Tedia because Shanghai Weston previously notified Tedia of its intention to make the amendment, discovery is ongoing, and dispositive motions are not due in the near term.[8]

---

[7] Since the parties dispute only whether the civil conspiracy amendment should be permitted, the Court will permit Shanghai Weston to make all other proposed amendments, unrelated to the civil conspiracy claim, without discussion. (*See* Doc. 42, #616 n.2).

[8] At the time that Shanghai Weston filed the motion at issue, the deadline for fact discovery was September 30, 2024, and the dispositive motion deadline was May 20, 2025. (Doc. 33, #496–97). In the interim, those deadlines have been amended to January 24, 2025, and August 15, 2025, respectively. (Doc. 51, #717).

8

Tedia opposes Plaintiff's motion for leave to the extent that it seeks to add a civil conspiracy claim. (Doc. 42). It argues that the amendment is futile since "Shanghai Weston has not (and cannot) plausibly allege the operative facts necessary to show any *agreement* among Tedia [], Anhui [], and Titan to injure Shanghai Weston by engaging in tortious conduct." (*Id.* at #613 (emphasis in original)). And, according to Tedia, this "absence of any allegations demonstrating an actual agreement among the alleged co-conspirators is fatal to Shanghai Weston's claim." (*Id.*). Alternatively, Tedia argues that "Shanghai Weston lacks any viable underlying tort claim upon which to base a derivative claim for civil conspiracy" because the alleged tort claims "are all duplicative of its contract claims." (*Id.* at #614). Put differently, Tedia challenges whether Shanghai Weston has plausibly alleged facts supporting the first (malicious combination) and fourth (underlying tort) elements of Ohio's civil conspiracy standard. *See Jordan*, 145 F. App'x at 520. The Court addresses each argument in turn.

**A.  Shanghai Weston Plausibly Alleges Facts Supporting a Malicious Combination between Tedia, Anhui, and Titan.**

First, Tedia contends that "Shanghai Weston failed to specifically allege the material facts necessary to support a civil conspiracy claim." (Doc. 42, #618). There appear to be three components to this contention, all focused on the first element of malicious combination: (1) that "[n]ot a single allegation describes an actual agreement between Tedia [], Anhui [], and Titan"; (2) that Shanghai Weston merely makes a "vague and conclusory allegation [that] 'Tedia [], Anhui [], and Titan conspired to injure' Shanghai Weston"; and (3) that the allegations Shanghai Weston

9

includes "are almost entirely focused on alleged misconduct on the part of non-parties Anhui [] and Titan." (*Id.* at #618 (citations omitted)). Tedia primarily relies on two cases in support of its argument: *Coley v. Lucas Cnty., Ohio*, No. 3:09-cv-8, 2014 WL 272667 (N.D. Ohio Jan. 23, 2014) and *Ryan v. Romo*, No. 2:14-cv-38, 2015 WL 1221281 (S.D. Ohio Mar. 17, 2015), *aff'd in part, rev'd in part* (Mar. 9, 2016).

In *Coley*, plaintiffs alleged that several police officers conspired to violate plaintiffs' relative's constitutional and state law rights after the relative died while in the county jail. *Coley*, 2014 WL 272667, at *1–2, *8. The Court dismissed plaintiffs' civil conspiracy claim because the relevant allegations included only "legal conclusions, not material facts necessary to support a claim of civil conspiracy." *Id.* at *9. To help explain that finding, the court recounted the plaintiffs' allegations:

> Defendants Gray and Schmeltz committed an unlawful act when they proximately caused [the relative's] death. Defendants Telb and McBroom knew or became aware of Defendants Gray and Schmeltz's involvement in [the relative's] death. The four Defendants then conspired to file false reports and make false statements to, among others, the FBI. … Defendants Telb and McBroom were made aware and had full knowledge of the assault on [the relative], which led to his death, but nonetheless intentionally and deliberately made false statements to federal officials … Defendants … made intentional, deliberate false statements in the course of the FBI investigation with the deliberate purpose of impeding the investigation, and working, individually and together[,] to ensure that [their] unlawful and illegal acts would not be discovered or exposed.

*Id.* Based on those allegations the court found that plaintiffs "fail[ed] to plead when, where, why, or how the conspiracy occurred or how the alleged conspiracy resulted in damages." *Id.* In other words, the *Coley* plaintiffs alleged only that the individual defendants knew of each other's actions, not that they agreed to commit them together. *See id.*

10

Similarly, in *Ryan*, the defendant-bank sought to dismiss "[p]laintiffs' civil conspiracy claim because the complaint merely allege[d] parallel conduct but not an *agreement* among defendants." 2015 WL 1221281, at *5 (emphasis in original). More specifically, the court found that plaintiffs "alleged no facts to suggest that any [d]efendants reached an agreement of any kind." *Id.* at *6. While there were allegations "that defendants *knew* about the misrepresentation" there were no pleaded "facts about any *agreement* to injure the [p]laintiffs." *Id.* (first emphasis added). Moreover, "[p]laintiffs [did] not plead any information about the *context* in which any alleged agreement was made." *Id.* (emphasis added).

Citing those cases, Tedia says Shanghai Weston likewise fails to plausibly allege any agreement. Shanghai Weston, on that other hand, says that these cases are distinguishable, and that Tedia's arguments are unpersuasive, because its proposed Amended Complaint "sets forth extensive facts demonstrating Tedia's conspiracy with Anhui and/or Titan." (Doc. 46, #673–74). It points, for example, to its allegations that "in 2021 Tedia sold its interest in A[n]hui to Titan and that during the sale [Tedia] conspired with Anhui and Titan to injure [Shanghai] Weston by intentionally interfering with [Shanghai] Weston's business contracts and relationships and converting Tedia Products in which [Shanghai] Weston had an ownership interest." (*Id.* at #674, 677–78 (cleaned up); *see also* Doc. 39-1 ¶¶ 85–87, #545–46). The problem for Shanghai Weston, though, is that the allegations that Tedia "conspired" or "intentionally interfer[ed]" are merely legal conclusions

11

masquerading as factual allegations—meaning the Court need not consider them. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

But Shanghai Weston also offers a different response to Tedia's futility argument—one directed at the pleading standard itself. Specifically, Shanghai Weston observes that pleading an express agreement is not required and that "*a common understanding or design, even if tacit*," can suffice. (Doc. 46 at #676 (citing *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d at 326)). Beyond that, it points to allegations in the proposed Complaint that Tedia transferred or licensed its Chinese trademark to Anhui, which severely limited or prohibited Shanghai Weston from selling Tedia's solvents in China. (Doc. 46, #674, 677–78; Doc. 39-1 ¶¶ 89, 91, 106, #546–48). And it says that this licensing allegation is enough for the Court to draw a reasonable inference that an actual agreement may have existed between Tedia, Anhui, and Titan. (Doc. 46, #677–78). Moreover, Shanghai Weston argues that the conspiracy allegations comport with *Coley*'s "when, where, why, or how" formulation:

> [W]ho (Tedia, in malicious combination with Anhui and Titan), when (starting in 2021), why (to severely limit or prohibit all together [Shanghai] Weston from selling Tedia Products), where (in China), and how (appointing Titan as a distributor, shipping products through Anhui, delaying shipments, turning over intellectual property, etc.), as well as how the conspiracy resulted in damage (displacing [Shanghai] Weston as the exclusive distributor of Tedia products in China and forcing them out of the market).

(*Id.* at #675.) For those reasons, Shanghai Weston says that it has alleged sufficient factual allegations to satisfy the pleading standard. (*Id.* at #678).

12

Construing the facts in the light most favorable to the Plaintiff, as the Court must, Shanghai Weston has alleged facts supporting a plausible inference of a malicious combination between Tedia, Anhui, and Titan. First, while Tedia argues that there isn't a single allegation describing an actual agreement between Tedia, Anhui, and Titan, Shanghai Weston is correct that an express agreement is unnecessary to plausibly allege a civil conspiracy claim. *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d at 326. Plausibly alleging a tacit agreement can suffice. *Id.* Second, while Shanghai Weston includes some legal conclusions in its pleadings, taking the proposed Amended Complaint as a whole, the Court does not find the allegations supporting the civil conspiracy claim vague or conclusory, as explained more below. Third, while Tedia argues that the relevant "allegations are almost entirely focused on alleged misconduct on the part of non-parties," each of the allegations Tedia highlights in support of this argument can be read to involve Tedia because they reference "Tedia Products." (*See* Doc. 42, #618; *e.g.*, Doc. 39-1 ¶ 95, #546 ("Since on or about January 1, 2022, Titan has been marketing and selling *Tedia Products* in China in competition with [Shanghai] Weston.") (emphasis added)).

There are several factual allegations the Court finds particularly salient in assessing the plausibility of Shanghai Weston's civil conspiracy claim. In December 2021, Tedia sold its ownership interest in Anhui to Titan. (Doc. 39-1, #545; Doc. 42, #614). Presumably, that would mean that Tedia could no longer dictate Anhui's actions. Yet at different times in 2022, the allegations and documents attached to the Complaint, and now the proposed Amended Complaint, suggest that Tedia and Anhui

13

were acting in concert as to interactions with Shanghai Weston. On September 2, 2022, Tedia instructed Shanghai Weston to "[p]lease continue working closely with Anhui [] and Titan to buy the products produced by Tedia [] and to expand Tedia's sales as well as [Shanghai] Weston's sales in China" and that it would "assist, where appropriate and to the extent we are able, in [Shanghai Weston's] communications with Anhui." (Doc. 39-17, #598). In December 2022, when addressing a Shanghai Weston purchase order from 2021, the same Tedia representative describes how, if Shanghai Weston did not issue a new purchase order to Anhui (for a purchase order Tedia was purporting to fulfill in the email), "Anhui [] would not be able to ship the container to [Shanghai] Weston" and that in "the future … Tedia [would] work with Anhui [] and [Shanghai] Weston to develop a more clear process for the Tedia [] made products." (Doc. 39-18, #601–02). Additionally, just after Tedia's sale of its ownership interest in Anhui, on December 31, 2021, an alleged distributor agreement between Anhui and Titan appeared to contemplate *Tedia's* solvents (rather than solely Anhui's solvents), implying some type of agreement between the three, and likely relying on Tedia's licensing of its Chinese trademark to Anhui. (*See* Doc. 1 ¶ 76, #13; Doc. 39-1 ¶ 94, #546; Doc. 39-19, #606 (stating that "[w]e hereby appoint [Titan] to be an authorized distributor for the company's Tedia solvents in China and to develop the product market for Tedia solvents within China" from January 1, 2022, to December 31, 2022). This would impact Shanghai Weston's business relations in China given that it thought it had the exclusive right to develop the same product market during the same time period. (Doc. 39-1 ¶¶ 43–47, #540–41; Doc. 39-10, #573 ("Shanghai

14

Weston … is exclusively authorized to … market and sell Tedia products in China … in effect January 1, 2019 to December 31, 2023[.]")). Reasonable inferences from this set of alleged facts suggest that Defendant Tedia had a common understanding—indeed, a tacit agreement—with Anhui and Titan on how past, current, or future relations would, or would not, occur between Shanghai Weston, on the one hand, and Tedia and Anhui, on the other.

Against that backdrop, Tedia's invocation of *Coley* and *Ryan* is not persuasive. In those cases, there were few—if any—allegations about potential tacit agreements. *Coley*, 2014 WL 272667, at *9; *Ryan*, 2015 WL 1221281, at *6. The plaintiffs in each merely alleged the defendants' mutual knowledge of the same set of underlying facts. There were also not sufficient allegations surrounding the context of any potential tacit agreement. *See, e.g.*, *Ryan*, 2015 WL 1221281, at *6. But here, there is at least some circumstantial evidence, including the above-referenced documents and Shanghai Weston's relationships with each alleged co-conspirators—two past suppliers and one past customer, all with shared interests and an understanding of Plaintiff's business—which weighs in Shanghai Weston's favor in assessing plausibility.

For these reasons, the Court finds that Shanghai Weston has plausibly alleged facts supporting the malicious combination element of a civil conspiracy claim.

**B.  Tedia Improperly Challenges Shanghai Weston's Previously Claimed Underlying Tort Claims, which Support the Conspiracy Amendment.**

Tedia next argues that "Shanghai Weston cannot state a claim for civil conspiracy because it lacks a viable underlying tort claim." (Doc. 42, #619). On this

15

front, Tedia correctly notes that "a civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Shabazz v. ICWU Ctr. For Worker Health & Safety Educ.*, No. 1:18-cv-339, 2021 WL 6197402, at *12 (S.D. Ohio Dec. 30, 2021) (quoting *Burgess v. Fischer*, 735 F.3d 462, 483 (6th Cir. 2013)). But there are two significant issues with Tedia's position. First, Tedia mixes up its order of operations—it tries to preclude the conspiracy claim by essentially arguing that the Court should dismiss the underlying tort claims, but it has not moved to dismiss (or at least has not successfully moved to dismiss) those claims. Second, "viability" is not the standard; plausibility is. And, as it stands, the existing Complaint includes three torts claims that can each independently fulfill the fourth element of Shanghai Weston's proposed civil conspiracy claim.

Start with an easy issue. Tedia's argument in part attacks a strawman. Tedia asserts that the first five causes of action in Shanghai Weston's proposed Amended Complaint cannot satisfy the fourth element of a civil conspiracy claim. (Doc. 42, #619–20). But Shanghai Weston does not dispute that. It is not relying on those claims to support its civil conspiracy claim. (*See* Doc. 39, #531 ("The claim arises from facts associated with [Counts VI through VIII.]"). So Tedia's argument premised on these five causes of action does not advance the ball for it.

How about the three claims on which Shanghai Weston actually relies as support for the proposed conspiracy claim? Tedia has an answer there, too. It argues that the tortious interference claims (previously raised in Counts VII and VIII; and now asserted in Counts VI and VII of the proposed Amended Complaint) and the

16

conversion claim (previously Count IX; now Count VIII) are "based on the same alleged conduct as Shanghai Weston's breach of contract claim" and "duplicative." (Doc. 42, #622). But these arguments once again miss the mark. The question here is whether Shanghai Weston may amend its Complaint to add a civil conspiracy claim, not whether the tort claims Shanghai Weston raised in its original Complaint warrant dismissal. Indeed, Tedia previously moved the Court to dismiss the claim for tortious interference with business contract. (*See* Doc. 21, #303). But the Court rejected that argument.[9] (Doc. 26, #447). And Tedia has never moved to dismiss the claims for tortious interference with business relations or conversion. So Tedia cannot indirectly attack these claims now through the artifice of challenging the civil conspiracy claim that rests atop them. *Shabazz* is instructive on this point. True, the court there granted summary judgment in defendant's favor on a civil conspiracy claim, but it did so *after* first granting summary judgment on each of the tort claims that could have served as the underlying basis for the civil conspiracy claim. *Shabazz*, 2021 WL 6197402, at *12. The problem here is that Tedia either has not attacked those claims (as to the claims for tortious interference with business relations or conversion) or its attack has been rejected (as to the claim for tortious interference with contract). So, in determining whether amending to include the conspiracy claim

---

[9] Although, at the time of the Court's earlier determination, Tedia advanced a very different argument. (*Compare* Doc. 21, #303 ("Shanghai Weston cannot maintain a claim for tortious interference with a contract in the absence of an underlying contract.") *with* Doc. 42, #621 (quoting *Cook v. Wal-Mart, Inc.*, 2002 WL 363719, at *4 (Ohio Ct. App., Mar. 7, 2002)) ("Shanghai Weston's purported claims for tortious interference are … are based on the same alleged conduct as its breach of contract claim … and are premised entire on the theory that Tedia [] tortiously interfered with a contract and relationship to which it was a party. 'A party to a contract cannot tortiously interfere with it.'")).

17

*itself* would be futile, the Court assumes for present purposes that the underlying claims are valid. As a result, the three currently existing tort claims can each plausibly support Shanghai Weston's proposed civil conspiracy claim at this time. To be sure, those claims ultimately may lose, and if so, those losses may also have spillover effects on the conspiracy claim. But, in the current procedural posture, that is a question for another day.

Beyond that, the Court also finds that there is no "undue delay, bad faith or dilatory motive on [Shanghai Weston's] part … or undue prejudice to [Tedia]" that would preclude Shanghai Weston's amendment. *Pittman*, 901 F.3d at 640–41 (quotation omitted). This is Shanghai Weston's first amendment; it timely filed its proposed Amended Complaint on the deadline for making amendments to the pleading; it gave notice to Tedia of its intention to add a civil conspiracy claim; and discovery is still ongoing. And as to the last point, the Court also observes that adding this claim should not change the nature of discovery, or at least not much. As already noted, to succeed on the conspiracy claim, Shanghai Weston will need to establish one or more of the underlying claims at issue. And all the conspiracy claim will require in addition is proof of an express or tacit agreement among the parties to undertake the tortious activity. That strikes the Court as a relatively constrained inquiry. Moreover, if addressing that issue requires a brief extension to the discovery deadline, the Court will entertain a motion in that regard.

## CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Leave to File Amended Complaint *Instanter* (Doc. 39) and **DIRECTS** Shanghai Weston to file its Amended Complaint on the Court's docket.

**SO ORDERED.**

January 8, 2025
 **DATE**                                            **DOUGLAS R. COLE**
                                                         **UNITED STATES DISTRICT JUDGE**